**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2011-NMCA-097

Filing Date:  August 17, 2011

Docket No. 29,753

IN THE MATTER OF THE APPEAL OF
FINAL ORDER IN THE ALTA VISTA
SUBDIVISION DP #1498
WQCC 07-11 (A)

LINK SUMMERS, CAROL RICHMAN,
MICHAEL FREEBOURN, and SHEILA
SHEPHERD,

       Plaintiffs-Appellants,

v.

NEW MEXICO WATER QUALITY
CONTROL COMMISSION,

       Defendant-Appellee,

SARA EDELMAN,

       Real-Party-in-Interest-Appellee.

APPEAL FROM THE WATER QUALITY CONTROL COMMISSION
Felicia Orth, Hearing Officer

The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellants
Gary K. King, Attorney General
Zachary Shandler, Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**VANZI, Judge.**

**{1}**     This case requires us to consider the discharge permitting scheme of the Water Quality Act (WQA), NMSA 1978, Sections 74-6-1 to -17 (1967, as amended through 2009). Specifically, we must determine whether a knowing misrepresentation of material fact on a permit application is presumed to have occurred "within the ten years immediately preceding" submission of that application for purposes of Section 74-6-5(E)(4)(a). Because we conclude that the Legislature intended that a knowing misrepresentation of material fact made during the application process comes within the above statutory period, we reverse the New Mexico Water Quality Control Commission's (Commission) order granting a discharge permit to Sara Edelman.

**BACKGROUND**

**{2}**     On August 16, 2004, Edelman filed an application for a septic waste discharge permit pursuant to the WQA, Sections 74-6-1 to -17, and  the New Mexico Water Quality Ground and Surface Water Protection regulations, 20.6.2 NMAC (12/01/95) (amended 1/15/01). Edelman filed the application in anticipation of creating the Alta Vista Subdivision, an area for ten mobile home units located on a 1.78-acre lot in Taos, New Mexico.  Pursuant to the application, Edelman proposed to discharge an estimated 3,750 gallons of wastewater per day to two conventional septic tank leachfield systems located on the lot.  Because of the large amount of effluent to be discharged, the regulations required that Edelman provide site-specific information that demonstrates the lithography below the site if such information was available.

**{3}**     Between August 2004 and September 2007, the New Mexico Environment Department (NMED), Ground Water Bureau (Bureau), and a hearing officer appointed by the NMED, reviewed Edelman's application and the proposed discharge site. Representatives from the Bureau visited and inspected the site, ran tests, and created models of the expected site lithology, and the hearing officer held hearings and accepted comments from the public.  During the 2005-2006 time period, the Bureau twice requested that Edelman supplement her application with additional information.  In her initial application, Edelman had only provided information about the lithological description of the Concha Torres well, which was located 1,100 feet from the proposed discharge site.  The Bureau's first letter, in September 2005, asked Edelman to provide information about other wells that were located closer to the site than the Concha Torres well and requested "[s]pecific information on the underlying geology at the site, including all well logs from adjacent properties."  In response to the Bureau's letter, Edelman supplemented her application with information from a well that we refer to as the Edelman well, which is on an adjacent property that she owns, and which she claimed was drilled in 2005.  After the Bureau received comments from neighbors that no well had been drilled on the adjacent property in 2005, it conducted further inquiry into the matter.  In a letter dated July 25, 2006, the

Bureau advised Edelman of the discrepancy and asked for "a well log showing well construction and lithological information" for that supply well. Edelman then admitted to the Bureau that the Edelman well was actually drilled without a permit in 1996 and that Edelman had not applied for a permit for that well until 2005. The consultant that Edelman hired to assist her with her application told the Bureau that he had requested information about the Edelman well from the driller and that he had asked the driller to create a well log from memory so that Edelman could respond to the Bureau's inquiry. Edelman submitted the Edelman well log. Several months later, the Bureau discovered that the log had been fabricated; and the information in it could not be verified.

{4}     The hearing officer reviewed the application and other materials, considered public comments, and issued a 53-page report to the NMED Secretary. The hearing officer summarized the evidence, made detailed findings of fact, and ultimately recommended granting the permit application with certain conditions, including the installation of an advanced treatment unit. In addressing the fabricated well log, the hearing officer stated that "[t]he material misrepresentation made here was to the State Engineer's Office" and that "[a]lthough the submission [of the log] to the Bureau might have ultimately made a difference in its determination on the approvability of the [a]pplication, it did not." Nevertheless, the report "encourage[d] the Secretary to carefully review the related documents in the file, and . . . make an express finding on this subject as part of his final order."

{5}     Upon receipt of the hearing officer's report, the Secretary considered the administrative record and the hearing officer's recommendations. The Secretary adopted all of the regulatory analysis and conclusions contained in the report with the exception of "the misrepresentation of a material fact in the permit application." Based on the information provided, the Secretary determined that Edelman knowingly misrepresented material facts in her application when she provided a well log for the Concha Torres well as evidence of the proposed site's lithology, when information about the closer Edelman well was available to her. The Secretary denied the permit application in accordance with Section 74-6-5(E)(4)(a), which provides:

> E.     The constituent agency shall deny any application for a permit or deny the certification of a federal water quality permit if:
>
> . . . .
>
> (4)     the applicant has, within the ten years immediately preceding the date of submission of the permit application:
> (a)  knowingly misrepresented a material fact in an application for a permit[.]

{6}     Edelman appealed the Secretary's final order denying the discharge permit to the Commission, arguing that she had not knowingly misrepresented any material facts in her application. Shortly thereafter, Link Summers, Carol Richman, Michael Freebourn, and

Sheila Shepherd (collectively, Appellants) successfully intervened in the appeal to the Commission, expressing their support for the Secretary's decision.

{7}    The Commission reviewed the record, heard closing arguments, and ultimately entered a final order in July 2009. It sustained the Secretary's adoption of the hearing officer's findings with regard to the regulatory analysis and conclusions contained in the report. In addition, the Commission adopted the hearing officer's findings in their entirety, thereby explicitly adopting the hearing officer's finding that Edelman had made a material misrepresentation to the State Engineer's office. The Commission nevertheless concluded that the record did not demonstrate by substantial evidence that Edelman knowingly misrepresented a material fact in her application "in violation of existing regulatory requirements." Deciding that the Secretary mistakenly relied on the mandatory denial language in Section 74-6-5(E)(4)(a), a non-unanimous Commission ordered NMED "to issue the permit with all requirements and conditions provided by the [h]earing [o]fficer's [r]eport." The Commission also concluded as a matter of law, however, that Edelman had failed to fully disclose all information in her permit application and suggested that the Secretary could instead terminate or modify Edelman's permit under Section 74-6-5(M) of the WQA. That provision provides:

> M.    A permit may be terminated or modified by the constituent agency that issued the permit prior to its date of expiration for any of the following causes:
>
> . . . .
>
> (2)    obtaining the permit by misrepresentation or failure to disclose fully all relevant facts[.]

{8}    Appellants timely appealed to this Court the order of the Commission approving Edelman's discharge permit application.

## DISCUSSION

{9}    On appeal, Appellants argue that (1) the Commission erred in rejecting the Secretary's finding that Edelman misrepresented a material fact and that the Commission misapplied the law, (2) there is not substantial evidence that Edelman met her burden under the regulations to demonstrate that public health and groundwater quality will be protected, and (3) procedural errors by the hearing officer mandate reversal. Because we agree with Appellants on the first issue and reverse the Commission's order granting the permit, we do not reach Appellants' second and third arguments.

### Standard of Review

{10}    On appeal, we will only set aside the Commission's order if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." Section 74-6-7(B) (setting forth the standard

4

of review for appeals arising out of administrative actions under the WQA). Ultimately, our review in this case is based on whether, under Section 74-6-5(E)(4)(a), a knowing misrepresentation of material fact on a permit application is deemed to have occurred "within the ten years immediately preceding" submission of that application. A ruling that is not in accordance with law should be reversed "if the agency unreasonably or unlawfully misinterprets or misapplies the law[.]" *Archuleta v. Santa Fe Police Dep't*, 2005-NMSC-006, ¶ 18, 137 N.M. 161, 108 P.3d 1019. We are not bound by the Commission's interpretation of the statute, as this is a matter of law that we review de novo. *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806.

**Edelman Knowingly Misrepresented a Material Fact in Her Permit Application**

{11} Appellants argue that the Commission erred when it determined that Edelman did not knowingly misrepresent a material fact in her application for a discharge permit. At the outset, we note that the Commission appears to have confused the factual and legal issues before it in this case. On one hand, the Commission adopted the hearing officer's findings in their entirety, including that Edelman made a material misrepresentation to the State Engineer's office. And it concluded that substantial evidence supported a finding that Edelman "failed to fully disclose all relevant facts in obtaining the permit." On the other hand, however, the Commission determined that the record did not "demonstrate support by substantial evidence . . . the Secretary's decision to deny the permit on grounds of [a] knowing[] misrepresentation of material submitted in this matter in violation of existing regulatory requirements." Finally, on appeal, the Commission contends that if we conclude that the Secretary properly construed the statutory period, it will concede that Edelman knowingly misrepresented a material fact in her application materials and will not defend her actions in this matter. Edelman has not filed a brief in this Court. Given the seemingly contradictory determinations concerning whether there was a material misrepresentation and because we are not bound by the Commission's concession on appeal in that regard, we conduct our own analysis of the issue in order to provide clarity. *See State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775 (stating that we are not bound by a party's concession on an issue on appeal).

{12} We review the Commission's finding that Edelman did not knowingly misrepresent a material fact in her permit application for an abuse of discretion. The first part of the issue, whether there was a knowing misrepresentation, is a question of fact that we review for substantial evidence. *See Durham v. Sw. Developers Joint Venture*, 2000-NMCA-010, ¶ 39, 128 N.M. 648, 996 P.2d 911 (stating that issues involving intent or knowledge are generally questions of fact). The second inquiry, whether that knowing misrepresentation was material, is a mixed question of law and fact. *See State v. Benavidez*, 1999-NMCA-053, ¶ 16, 127 N.M. 189, 979 P.2d 234 (adopting a standard that materiality of a false statement is generally a mixed question of law and fact), *vacated in part on other grounds*, 1999-NMSC-041, ¶ 5, 128 N.M. 261, 992 P.2d 274.

{13} We begin with whether Edelman made a knowing misrepresentation in her application. The record establishes that when Edelman initially filed her application with

5

NMED, she provided information relating only to the Concha Torres well in order to satisfy the regulatory requirement that an applicant provide the "[d]epth to and lithological description of rock at base of alluvium below the discharge site if such information is available[.]" 20.6.2.3106(C)(6) NMAC (09/15/02). The Concha Torres well was located approximately 1,100 feet from the proposed discharge site, and the log listed a 60-foot basalt layer underlain by a 140-foot clay layer. This information might have satisfied the regulation's requirement had it been the only information available to Edelman and had it been representative of the site. *See* 20.6.2.3106(C)(6) NMAC. It was neither. When Edelman first filed her application, she had already drilled the Edelman well, which was located a mere 100 feet from the proposed discharge site. Rather than submit information about that well, which was available to her and which she had a duty to provide under the regulation, Edelman did not furnish the information until the Bureau pressed her for it in a letter stating that it needed clarification and specific information about all the wells located on properties adjacent to the proposed discharge site. *See* 20.6.2.3106(C)(6) NMAC (stating that an applicant *shall* provide lithological information "*if such information is available*" (emphasis added)). Even then, she concealed facts about the date and circumstances surrounding how the Edelman well had been drilled, which caused the Bureau confusion about which well her first supplemental information was referencing and whether that information addressed their request for information about all wells on adjacent properties. As a result, the Bureau had to again ask for additional information. This time, Edelman submitted a well log, however, it contained fabricated information that could not be verified. While there is evidence that Edelman may have inadvertently failed to apply for a permit for the Edelman well in 1996 when it was first drilled, there is no evidence in the record that Edelman had forgotten that this well existed or that she could not have obtained and provided the necessary information to the Bureau at an earlier point in the application process. Thus, we conclude that there is no evidence in the record to support the Commission's determination that Edelman did not knowingly misrepresent information in her permit application when she initially failed to disclose the information regarding the Edelman well and impliedly represented that information about the Concha Torres well was the only relevant information available.

**{14}** The second question we address is whether Edelman's knowing misrepresentation about the site lithology was a "material fact." *See* § 74-6-5(E)(4)(a). "A fact is material if such fact may affect the outcome of the case." *Lopez v. Kline*, 1998-NMCA-016, ¶ 8, 124 N.M. 539, 953 P.2d 304. Because the regulations require an applicant to provide the lithological description of the proposed site if that information is available, it is clear that such information could affect the outcome of any particular permitting decision. Thus, the lithological information was material to the Commission's decision. *See* 20.6.2.3106(C)(6) NMAC. Here, Edelman initially did not produce a well log for the Edelman well, and when she did eventually provide one, the Bureau discovered that the drilling date on the well log was incorrect, the integrity of the log was called into question, and the log was later determined to be a fabrication. Therefore, to the extent that the Commission concluded there was not substantial evidence that Edelman knowingly misrepresented a material fact in her permit application, we disagree and hold that the Commission erred in so finding.

6

**Edelman's Misrepresentation During the Application Process Required Denial of the Permit**

**{15}**    Because there was unambiguous and uncontroverted evidence that Edelman knowingly misrepresented a material fact in her application for a discharge permit, and because the Commission so concedes this point on appeal, we next determine whether the Commission abused its discretion in granting the permit.  Appellants contend that the Commission was required to deny the permit application pursuant to Section 74-6-5(E)(4)(a) because the misrepresentation occurred "within the ten years immediately preceding the date of submission of the permit application." *See id.*  The Commission, on the other hand, contends that the misrepresentation did not occur within the statutory period and, therefore, the permit was properly granted.  The critical question in this case is whether Edelman's misrepresentation made during the application process was within the ten years immediately preceding the date of submission of her application.  For the reasons that follow, we conclude that it was.

**{16}**    First, we decide when Edelman's misrepresentation about the Edelman well occurred.  We then ask whether this date "preceded" the "date of the submission" of the application, such that the permit should have been denied pursuant to Section 74-6-5(E)(4)(a).  As we have noted, Section 74-6-5(E)(4)(a) provides that "[t]he constituent agency shall deny any application for a permit . . . if . . . the applicant has, within the ten years *immediately preceding* the date of submission of the permit application . . . knowingly misrepresented a material fact in an application for a permit[.]" (Emphasis added).  We interpret the provisions of Section 74-6-5(E)(4)(a) to "give effect to the intent of the [L]egislature." *Wilson v. Denver*, 1998-NMSC-016, ¶ 36, 125 N.M. 308, 961 P.2d 153.  We begin by considering the plain language of the statute and "assume that the ordinary meaning of the words expresses the legislative purpose." *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 12, 141 N.M. 41, 150 P.3d 991. However, "[w]e must also consider the practical implications and the legislative purpose of a statute, and when the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application, we go beyond the mere text of the statute." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361, *cert. denied*, 2010-NMCERT-004, 148 N.M. 572, 240 P.3d 659.

**{17}**    Turning to the first question, we note that there is no separate definition or clarification in the statute of when a misrepresentation occurs.  We turn, therefore, to the plain meaning of the words. *Black's Law Dictionary* defines a misrepresentation as "[t]he act of making a false or misleading assertion about something." *Black's Law Dictionary* 1091 (9th ed. 2009).  It encompasses an element of communication about something to some audience. *See Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 1998-NMCA-017, ¶ 55, 124 N.M. 549, 953 P.2d 722 (explaining that a misrepresentation is a statement that is communicated). Because a misrepresentation does not occur until it has been communicated to another person, we conclude that under the WQA, a misrepresentation occurs when materials containing a misrepresentation are conveyed to the Bureau.  Consequently, in this case, Edelman's misrepresentation occurred on August 19, 2004, when she conveyed information about the Concha Torres well and failed to include information about the yet

7

more proximate Edelman well to the Bureau in her initial application. The Commission does not dispute that this is the relevant date.

{18}    With regard to the second question, however, the Commission argues that under a plain meaning interpretation of the statute, Edelman's misrepresentation does not precede the "date of submission of [her] permit application." Under the Commission's theory, Edelman's application was originally filed on August 19, 2004, and it was therefore "submitted" on that date. Thus, according to the Commission, the statutory period ran from August 18, 1994, to August 18, 2004. Because Edelman's misrepresentation occurred simultaneously with the submission of the application, and not "within the ten years immediately preceding the date of submission of the permit application," the Commission contends that it did not misconstrue the requirement for denial of the permit under Section 74-6-5(E)(4)(a). We are not persuaded.

{19}    We observe that the plain meaning interpretation of Section 74-6-5(E)(4)(a) proposed by the Commission in this case leads to an unreasonable gap in the statutory scheme. *See Bishop*, 2009-NMSC-036, ¶ 11 ("We must also consider the practical implications and the legislative purpose of a statute, and when the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application, we go beyond the mere text of the statute."). The Commission's interpretation of the statute would require the agency to deny applications for permits only in those situations where the applicant knowingly misrepresented material facts in earlier permit applications, and which therefore clearly precede the submission of a current application. Conversely, according to the Commission, if a deliberate misrepresentation occurs in an application currently before the agency, the agency would be limited to—at the most—granting the permit and then terminating or modifying it pursuant to Section 74-6-5(M). Section 74-6-5(M)(2) states that "[a] permit may be terminated or modified by the constituent agency that issued the permit . . . for . . . obtaining the permit by misrepresentation." This statutory provision, however, expressly deals only with those cases in which the permit has already been issued, which is not the case here. We acknowledge that Section 74-6-5(E)(4) provides no guidance for those circumstances in which a knowing misrepresentation is revealed or discovered in an on-going permitting process, but we do not believe that the Legislature intended the result suggested by the Commission.

{20}    Accordingly, we look beyond the plain language to determine legislative intent. We begin by considering the meaning of "submit." *Black's Law Dictionary* defines "submit" as "[t]o end the presentation of further evidence in (a case) and tender a legal position for decision." *Black's Law Dictionary* 1562 (9th ed. 2009). Although this definition is ordinarily used when submitting a case to the fact finder at the close of trial, we conclude that its use is appropriate in this context as well. When we apply this definition to the statute, the date of submission of an application and discharge plan to NMED occurs once the agency has received all of the information that it needs to consider the application, which necessarily includes all of the information that an applicant must include in their discharge plan pursuant to 20.2.6.3106(C) NMAC. We clarify that the date of submission of the application could be the date that an applicant initially files an application and discharge plan with NMED, or some later point if the applicant fails to provide necessary information in the

8

initial filing, and the agency determines that it needs that information in order to consider the application. *See In re Rates & Charges of U.S. W. Commc'ns, Inc. v. N.M. State Corp. Comm'n*, 116 N.M. 548, 549, 865 P.2d 1192, 1193 (1993) (concluding that the six-month period the agency had to consider an application did not begin on the date the application was initially filed because the application was missing critical information, so the six-month period began after the applicant provided all the information in its application that the agency needed to consider the application).

{21}    Here, in July 2006, the Bureau requested additional information from Edelman in order to fully evaluate her permit discharge application. Edelman provided the additional information on July 28, 2006, and as a result, that is the date we determine her application was actually submitted. Edelman's material misrepresentation of fact to the Bureau therefore occurred in the relevant period of time "immediately preceding the date of submission of the permit application."

{22}    The facts of this case, however, are not the sole basis for our decision, and we take the opportunity to provide guidance in other factual situations that require the denial of an application. As we have noted, we must take care to avoid adoption of a construction of a statute that would render its application absurd or unreasonable or lead to injustice or contradiction. *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868. The Legislature's obvious concern for safeguarding our groundwater from pollution and contamination is made clear by the fact that making a false representation of fact is a fourth degree felony. *See* § 74-6-10.2(A), (B). Consistent with the Legislature's intent, it is reasonable to assume that mandatory denial of a discharge permit is required for those cases in which an application conveys a material misrepresentation of fact when the application is submitted. A logical extension of this interpretation requires a denial of permits in situations where a misrepresentation is made in an initial application and no further information is requested by the agency, as well as in those cases in which an applicant might not misrepresent any information in the initial application but may convey a material misrepresentation of fact in supplemental information requested by the agency.

{23}    In conclusion, we believe that to interpret the statute as the Commission requests would create an absurd result as an applicant who knowingly misrepresents a material fact in a current application for a discharge permit could effectively escape any sanction during the permitting process. At most, the applicant would be subject to the possibility of termination or modification of their permit at the Secretary's discretion *after* the permit had already been issued, thereby eliminating any incentive to fully and honestly disclose all material facts on the application form. We do not believe that this comports with the spirit of the WQA. Therefore, we interpret the "immediately preceding the date of submission of the application" language in the statute to apply to all applicants who knowingly misrepresent a material fact in both current and prior applications for discharge permits. This interpretation is both reasonable and consistent with the Legislature's intent, and it allows the entire permitting scheme to be covered. Finally, we observe that a knowing misrepresentation of a material fact that is revealed or disclosed during the application process necessarily prevents a waste of the agency's time and resources on applicants that have violated an important aspect of the permitting process.

9

**{24}** In this case, Edelman knowingly misrepresented a material fact in her application for a discharge permit before the application was submitted to the agency for review. As a result, the Commission was required to deny her permit application under Section 74-6-5(E)(4)(a).

**CONCLUSION**

**{25}** For the reasons set forth above, we set aside the Commission's order because it is not in accordance with law. Pursuant to Section 74-6-5(E)(4)(a), the Edelman application for a discharge permit must be denied.

**{26}  IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for *Summers v. NM Water Quality Control Commission*, No. 29,753**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-AA | Administrative Appeal |
| AL-HR | Hearings |
| AL-IN I | Investigations |
| AL-JR | Judicial Review |
| AL-LI | Legislative Intent |
| AL-SE | Sufficiency of Evidence |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-PO | Pollution |
| NR-WL | Water Law |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |