# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMCA-011

Filing Date: November 4, 2019

No. A-1-CA-35781

TUCSON ELECTRIC POWER CO.,

Petitioner-Appellant

v.

TAXATION AND REVENUE
DEPARTMENT OF THE STATE OF
NEW MEXICO,

Respondent-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
Monica Ontiveros, Hearings Officer

Released for Publication February 11, 2020.

Sutin, Thayer & Browne
Suzanne W. Bruckner
Christopher A. Holland
Albuquerque, NM

for Appellant

Peifer, Hanson & Mullins, P.A.
Matthew E. Jackson
Mark T. Baker
Albuquerque, NM

New Mexico Taxation & Revenue Department
Marek Grabowski, Staff Attorney
Santa Fe, NM

for Appellee

## OPINION

**HANISEE, Chief Judge.**

**{1}**     Tucson Electric Power Company (Taxpayer) appeals from the administrative hearing officer's (AHO) decision and order denying its protest of the New Mexico Taxation and Revenue Department's (the Department) denial of Taxpayer's request for a tax refund. We affirm, but on a basis different than that relied on by the AHO.

## BACKGROUND

**{2}**     Taxpayer co-owns Luna Energy Facility, a power plant located near Deming, New Mexico. Taxpayer purchases natural gas from various third parties, including out-of-state vendors, for use in producing electricity at the plant. In December 2014 Taxpayer applied to the Department for a refund of $434,860.92 for the tax period July 1, 2011, through December 31, 2011, based on its belief that its purchases of natural gas qualified for a deduction under the Gross Receipts and Compensating Tax Act (the Act), NMSA 1978, §§ 7-9-1 to -117 (1966, as amended through 2019). The Department denied Taxpayer's refund application, and Taxpayer filed an administrative protest.

**{3}**     In its protest, Taxpayer argued that it was entitled to a refund "for compensating taxes paid in error . . . for purchases that are not subject to compensating tax" under the Act.[1] Taxpayer argued that its purchases of natural gas fell within Section 7-9-65 of the Act, which provides, inter alia, that "receipts from selling chemicals or reagents in lots in excess of eighteen tons . . . may be deducted from gross receipts."[2] Section 7-9-65. The Department responded that Section 7-9-65 is inapplicable to Taxpayer's purchases of natural gas for use in generating electricity and that Taxpayer had failed to clearly establish its entitlement to the deduction.

**{4}**     Following a hearing, the AHO found that Taxpayer had "paid compensating tax on the purchase of natural gas during the tax period" from various companies, all of which the AHO found "have no nexus with New Mexico and are out-of-state companies." The AHO's analysis began with a discussion of the relationship between New Mexico's compensating tax and gross receipts tax and included a threshold determination that "[d]eductions that are applicable to the gross receipts tax may be used to determine whether compensating tax is due on a transaction." The AHO cited *Western Electric Co. v. New Mexico Bureau of Revenue*, 1976-NMCA-047, ¶ 14, 90 N.M. 164, 561 P.2d 26, for the proposition that "the [L]egislature intended to make our gross receipts tax and our compensating tax correlate[]: a [deduction] from the gross

---

1A "compensating tax" is the tax imposed on the value of tangible property purchased out of state and brought into New Mexico for use inside the state. Section 7-9-7(A)(2). It is designed "to prevent the importation of goods that would have been subject to gross receipts tax had they been produced or designed in New Mexico" and is considered a "complementary" tax to the gross receipts tax, which taxes in-state sales. *Dell Catalog Sales LP v. N.M. Taxation & Revenue Dep't*, 2009-NMCA-001, ¶¶ 53, 59, 145 N.M. 419, 199 P.3d 863.

2Although abandoned on appeal, Taxpayer alternatively argued that it was eligible to claim the deduction provided in Section 7-9-46(A) for "[r]eceipts from selling tangible personal property . . . if the sale is made to a person engaged in the business of manufacturing" and provided that the person "incorporate[s] the tangible personal property as an ingredient or component part of the product that the buyer is in the business of manufacturing." *Id*. The AHO found that the deduction provided by Section 7-9-46 "cannot apply" here because there was no evidence that the nontaxable transaction certificate required by Section 7-9-46 existed.

receipts tax must also be treated as a [deduction] from the compensating tax."[3] The AHO nonetheless determined Taxpayer's transactions did not qualify for the deduction because Taxpayer failed to present sufficient evidence that it purchased and received natural gas in "lots" greater than eighteen tons as required by Section 7-9-65. Ultimately concluding that Taxpayer had failed to meet its burden of establishing its right to the deduction, the AHO denied Taxpayer's protest. Taxpayer appeals.

## DISCUSSION

**{5}** On appeal, Taxpayer argues that the AHO made two errors of law: first, determining that "natural gas delivered by pipe to a power plant is not sold or delivered by 'lots' because gas is a 'good' " and " 'goods' and 'lots' are mutually-exclusive"; and second, that "the statute mandates that gas must be both sold and delivered in lots greater than [eighteen] tons to qualify for the deduction." Taxpayer contends that the AHO's ruling "flies in the face of the statute's plain language." The Department argues that the AHO's "decision should be affirmed because the Legislature did not intend Section 7-9-65 to apply to the sale or use of natural gas" and that Taxpayer "failed to meet its burden to show that the natural gas it purchased was sold in lots of eighteen tons." We agree that the statute's plain language controls here, and that Section 7-9-65—permitting deduction for "receipts from selling chemicals or reagents in lots in excess of eighteen tons"—is inapplicable to receipts for natural gas, and that the AHO erred in applying it. Because Section 7-9-65 does not apply, we affirm denial of Taxpayer's protest.

## Standard of Review

**{6}** This Court will only set aside an AHO's decision if the decision is: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015); *Stockton v. N.M. Taxation & Revenue Dep't*, 2007-NMCA-071, ¶ 8, 141 N.M. 860, 161 P.3d 905. The issue presented requires us to interpret Section 7-9-65. We are not bound by the AHO's interpretation as the interpretation of statutes presents a question of law that we review de novo. *See In re Final Order in Alta Vista Subdivision DP No. 1498 WQCC 07-11(A)*, 2011-NMCA-097, ¶¶ 1, 10, 150 N.M. 694, 265 P.3d 745 ("We are not bound by the [Water Quality Control] Commission's interpretation of the statute, as this is a matter of law that we review de novo."). We may affirm the AHO's ruling on a ground not relied upon by the AHO if reliance on the new ground would not be unfair to Taxpayer. *See Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901 ("Even if the issue had not been preserved below, it is established law that our appellate courts will affirm a district court's decision if it is right

---

[3] Well after *Western Electric Co.*, 1976-NMCA-047, the Legislature amended Section 7-9-12 in 1984 to state "[e]xemptions from either the gross receipts tax or the compensating tax are *not* exemptions from both taxes unless explicitly stated otherwise by law." NMSA 1978, § 7-9-12 (1984) (emphasis added). While the case at bar does not require that we reconcile the conflict between *Western Electric Co.* and Section 7-9-12, we note the incompatibility of each approach with the other and the fact that the AHO's order referred exclusively to *Western Electric Co.* as applicable precedent.

for any reason, so long as the circumstances do not make it unfair to the appellant to affirm.").

**{7}**    In reviewing the AHO's decision, we presume that the "assessment of taxes or demand for payment made by the [D]epartment is . . . correct." NMSA 1978, Section 7-1-17(C) (2007). Moreover, we presume that all property bought by any person for delivery into New Mexico is subject to a compensating tax on the value of the property. Section 7-9-8. As such, "deductions are construed strictly against the taxpayer." *TPL, Inc. v. N.M. Taxation & Revenue Dep't,* 2003-NMSC-007, ¶ 9, 133 N.M. 447, 64 P.3d 474. The taxpayer bears the burden of proving that it is eligible for the deduction. *Id.* ¶ 31.

**Applicable Rules of Statutory Construction**

**{8}**    "The guiding principle in statutory construction requires that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *City of Santa Fe ex rel. Santa Fe Police Dep't v. One (1) Black 2006 Jeep*, 2012-NMCA-027, ¶ 7, 286 P.3d 1223 (internal quotation marks and citation omitted). "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 16, 326 P.3d 1120 (internal quotation marks and citation omitted). "[W]here the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others." *N.M. Real Estate Comm'n v. Barger*, 2012-NMCA-081, ¶ 7, 284 P.3d 1112 (internal quotation marks and citation omitted). Moreover, "[w]e consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." *Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6, 436 P.3d 741 (alterations, internal quotation marks, and citation omitted).

**Taxpayer's Purchases of Natural Gas Do Not Qualify for Section 7-9-65's Deduction**

**{9}**    In full, the previous version of Section 7-9-65 provides:

> Receipts from selling *chemicals or reagents* to any mining, milling or oil company for use in processing ores or oil in a mill, smelter or refinery or in acidizing oil wells, and receipts from selling *chemicals or reagents* in lots in excess of eighteen tons may be deducted from gross receipts. Receipts from selling explosives, blasting powder or dynamite may not be deducted from gross receipts.

NMSA 1978, § 7-9-65 (1969) (emphasis added). The question, then, is whether natural gas is a category of chemical or reagent under the Act. "Chemical" as defined by the Department's regulations is "a substance used for producing a chemical reaction." 3.2.223.7(B) NMAC. Taxpayer argues that based on parties' stipulations, and specifically the Department's concession, the AHO correctly found that the natural gas purchased and used by Taxpayer was a "chemical" within the meaning of Section 7-9-65. Relying on the right-for-any-reason doctrine, the Department now contends—despite its past stipulation to the contrary—that the Legislature did not intend for the statutory deduction for chemicals or reagents to apply to natural gas.

**{10}** We apply the principles of statutory construction to determine whether Taxpayer's receipts for the purchase of natural gas falls under "chemicals or reagents" in the statute. Section 7-9-65. At the outset, we note that while we generally look to parties' stipulations with favor, "we [are] not . . . bound by parties' stipulations [or the Department's concessions] as to applicable law[,]" *Williams v. Mann*, 2017-NMCA-012, ¶ 30, 388 P.3d 295, because we must conduct our own analysis; and we also will not enforce stipulations if they are "unreasonable, . . . against good morals or sound public policy[.]" *S. Union Gas Co. v. Cantrell*, 1953-NMSC-092, ¶ 6, 57 N.M. 612, 261 P.2d 645 (internal quotation marks and citation omitted); *DeMichele v. N.M. Taxation & Revenue Dep't*, 2015-NMCA-095, ¶ 8, 356 P.3d 523 ("[T]his Court is not bound by the [s]tate's concession."). Here, the question of whether "natural gas" is a "chemical or reagent" is a question of law, which we review de novo and independent of the parties' stipulation before the AHO that natural gas is used to produce a chemical reaction and therefore is a chemical for purposes of Section 7-9-65.

**{11}** First, because Taxpayer is claiming a tax deduction under Section 7-9-65, we must strictly construe the statute in favor of the Department and "the right to the exemption or deduction must be clearly and unambiguously expressed in the statute, and the right must be clearly established by the taxpayer." *Sec. Escrow Corp. v. N.M. Taxation & Revenue Dep't*, 1988-NMCA-068, ¶ 8, 107 N.M. 540, 760 P.2d 1306. In light of this framework, we must determine whether the plain meaning of the statute clearly and unambiguously allows for a deduction for the receipts from the purchase of natural gas. We conclude that it does not.

**{12}** Second, we recently addressed, in a memorandum opinion, a markedly similar question regarding the applicability of Section 7-9-65 to the sale of coal. *See Peabody Coalsales Co. v. N.M. Taxation & Revenue Dep't*, No.A-1-CA-36632, mem. op. ¶ 8 (N.M. Ct. App. May 31, 2019) (non-precedential).[4] In *Peabody Coalsales, Co.*, we determined that the word "chemical" in Section 7-9-65 is ambiguous, and ultimately decided that in enacting the provision the Legislature did not intend to create a separate deduction for receipts from the sale of coal. *Peabody Coalsales Co.*, No. A-1-CA-36632, mem. op. ¶¶ 13, 15. We, therefore, denied the taxpayer's claim that it was entitled to a tax deduction from gross receipts of its sale of coal to an Arizona power plant. *Peabody Coalsales Co.*, No. A-1-CA-36632, mem. op. ¶¶ 1-2. Applying the same rationale we

---

4Despite our citation and adherence to the rationale employed in *Peabody,* it continues to be the practice of this Court to only rely on published cases as precedent.

applied in *Peabody Coalsales Co.* here, we similarly determine Section 7-9-65 to be ambiguous as to its applicability to natural gas and emphasize that both Section 7-9-65 and its corresponding regulations fail to mention the words "natural gas" or "fuels." *See Peabody Coalsales Co.*, No. A-1-CA-36632, mem. op. ¶ 12. As with coal, had the Legislature intended to provide a deduction for receipts from the sale or use of natural gas, it could have specified the inclusion of natural gas within the statutory language establishing the deduction, as in the enactment of other legislation applicable to natural gas. *See, e.g.*, NMSA 1978, § 7-29B-6 (1999) (discussing a tax incentive regime for the production of natural gas and crude oil).[5] Where the Legislature has elected to extend a deduction, we must presume it did so intentionally. *See State v. Jade G.*, 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659; *see also* §§ 7-9-83(B), -84(B) (providing deductions from gross receipts and compensating tax, respectively, for jet fuel); §§ 7-9-101, -102 (providing deductions from gross receipts and compensating tax, respectively, for equipment for certain electric transmission or storage facilities); §§ 7-9-110.1, -110.2 (providing deductions from gross receipts and compensating tax, respectively, for locomotive fuel). We are not at liberty to read into unspecific statutory language an exemption or a deduction that is not expressly provided for by statute. *See Sec. Escrow Corp.*, 1988-NMCA-068, ¶ 8. Such is precisely what Taxpayer seeks.

**{13}**   Third, as further support for our conclusion we note that the Legislature has enacted other provisions that pertain to natural gas, such as the Oil and Gas Emergency School Tax Act (the Oil & Gas Tax), NMSA 1978, §§ 7-31-1 to -27 (1959, as amended through 2005). *See* § 7-31-4(A)(3) (levying a 4 percent tax on the taxable value of natural gas with limited exceptions); § 7-9-33(A) (providing that "receipts from the sale of products other than for subsequent resale in the ordinary course of business, for consumption outside the state, or for use as an ingredient or component part of a manufactured product are subject to the Gross Receipts and Compensating Tax Act as well as to the Oil & Gas [Tax]"). Notably under the Oil and Gas Tax, the Legislature expressly levies a gross receipts tax and compensating tax, with limited exemptions, on natural gas. *See* § 7-31-4(A)(3); § 7-9-33. Such express legislative action indicates the Legislature did not broadly intend for the Section 7-9-65 deduction to apply to receipts from natural gas sales. *See Valenzuela*, 2014-NMCA-061, ¶ 16 (noting that a statute's history and background can aid in determining legislative intent).

**{14}**   To reiterate: tax exemptions and deductions "are a matter of legislative grace and a way of achieving policy objectives" and are to be "construed against the taxpayer." *Sutin, Thayer & Browne v. N.M. Taxation & Revenue Dep't*, 1985-NMCA-047, ¶ 17, 104 N.M. 633, 725 P.2d 833; *Murphy v. N.M. Taxation & Revenue Dep't*, 1979-NMCA-065, ¶ 20, 94 N.M. 90, 607 P.2d 628. It is the taxpayer's burden to establish that it is entitled to the deduction. *TPL, Inc.*, 2003-NMSC-007, ¶ 31. Taxpayer has not met its burden to establish its entitlement here, and we will not construe the word "chemical" in dicta to encompass natural gas. Since Taxpayer failed to satisfy the threshold question of whether natural gas is covered by the statute, and we conclude it is not, we decline to address the parties' remaining arguments on appeal.

---

5In NMSA 1978, Section 7-29B-2(F) (1999), "natural gas" is defined as "any combustible vapor composed chiefly of hydrocarbons occurring naturally"—a term and definition notably more specific than that within Section 7-9-65.

**{15}**     Lastly, we observe that the Legislature further elaborated upon its intent as to this very topic by recently amending Section 7-9-65, effective July 1, 2019. The amendment qualified the deduction applicable to receipts from selling chemicals and reagents in excess of eighteen tons as "to any hard-rock mining or milling company for use in any combination of extracting, leaching, milling, smelting, refining or processing ore at a mine site[.]" *Id.* This clarification—which notably excluded natural gas— highlights that the Legislature does not intend to bestow a tax deduction to the sale of natural gas to power plants for the production of electricity, and thus such transactions do not fall within the purview of Section 7-9-65. While not dispositive as to prior transactions, the recent change clarifies current legislative intent in a manner that supports our analysis and conclusion herein.

**{16}**     Because the right to claim a deduction for receipts from the sale and use of natural gas is not clearly and unambiguously expressed in, or even addressed by, Section 7-9-65, we conclude it is inapplicable to receipts from the sale and use of natural gas. Therefore, Taxpayer is not entitled to a deduction under Section 7-9-65.

**CONCLUSION**

**{17}**     For the foregoing reasons, we affirm the AHO's denial of Taxpayer's protest.

**{18}     IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**BRIANA H. ZAMORA, Judge**

**RICHARD C. BOSSON, Pro Tempore Judge**