The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **January 9, 2024**

**No. A-1-CA-39739**

**DRIVETIME CAR SALES COMPANY, LLC,**

     Protestant-Appellant,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT,**

     Respondent-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Ignacio V. Gallegos, Hearing Officer**

Akerman LLP
David V. Jones
San Antonio, TX
Peter O. Larsen
Jacksonville, FL

for Appellant

Raúl Torrez, Attorney General
Peter Breen, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

{1}	Protestant Drivetime Car Sales Company, LLC (Taxpayer) appeals the denial of its protest seeking a refund from the New Mexico Taxation and Revenue Department (the Department) of excise tax payments made pursuant to the New Mexico Motor Vehicle Excise Tax Act (the Act), NMSA 1978, §§ 7-14-1 to -11 (1988, as amended through 2023). This appeal involves a matter of first impression as to the interpretation of Section 7-14-3 of the Act and presents the question of whether a business, such as Taxpayer, is entitled to a refund of excise taxes paid in relation to used vehicles that are purchased via retail installment contracts and subsequently returned to the business by the purchaser. For the reasons that follow, we affirm.

**BACKGROUND**

{2}	Taxpayer is a vehicle sales and financing agent that owns and operates used vehicle dealerships in New Mexico. Taxpayer is licensed as a used motor vehicle dealer as well as a motor vehicle sales finance company, which allows Taxpayer to both sell used vehicles to purchasers and finance the purchase loans associated therewith. At the time a purchaser enters into a retail installment contract with Taxpayer for the purchase of a vehicle, Taxpayer pays the excise tax imposed by Section 7-14-3. While Taxpayer pays such excise tax and fees upfront—specifically,

upon submission of the application for change of title and registration, contemporaneous with the initial transfer of possession—the sum of the excise tax and fees is included in the total sales price of the vehicle and reflected in the amount to be paid by the purchaser over time through the retail installment contract. Taxpayer allows purchasers to, in its words, "unwind" the contract by executing a "return agreement" or "rescission agreement" and returning possession of a purchased vehicle for any reason within five days of the vehicle sale, and in some instances beyond the five-day limit. Pertinent to this appeal, when a purchaser returns a vehicle, Taxpayer does not require the purchaser to pay back the excise tax already paid by Taxpayer. Rather, Taxpayer seeks to recoup the excise tax paid by pursuing a refund from the Department.

{3}     Here, Taxpayer requested a refund from the Department for excise taxes paid in the amount of $69,213.66 for 175 vehicles that were eventually returned to Taxpayer. All of the vehicles at issue were returned after the five-day return period, including twelve vehicles that were returned more than 100 days after purchase. The Department denied Taxpayer's request for a refund, and Taxpayer submitted to the Department a protest of such denial. Prior to the administrative hearing on Taxpayer's protest, Taxpayer filed a motion for summary judgment and a request for oral argument with the administrative hearing office.

2

{4}      Following the hearing, the administrative hearing officer (AHO) concluded in its decision and order that the Department, rather than Taxpayer, was entitled to summary judgment and denied Taxpayer's protest of the Department's denial of Taxpayer's refund request. In its decision and order, the AHO determined that Section 7-14-3 sets forth a rebuttable presumption that a sale is complete upon the issuance of a certificate of title for each vehicle sold. In resolving the parties' arguments regarding the effect of such presumption—as well as the meaning of "sale," which the Act does not define—the AHO relied on the definition of "buying or selling" from the New Mexico Gross Receipts and Compensating Tax Act, NMSA 1978, § 7-9-3(A) (2019, amended 2023), to ultimately find that Taxpayer had failed to rebut the presumption that a sale had occurred in the transactions below. The AHO concluded that, in this case, "[s]ales occurred when the seller and customer entered into the retail purchase agreement . . . whereby customer paid a down payment and possession of the vehicle transferred," and Taxpayer was therefore not entitled to the refunds it sought. Taxpayer appealed the AHO's decision and order, pursuant to NMSA 1978, Section 7-1-25 (2015), which—in the realm of taxation—provides the statutory right for a party to appeal an adverse decision and order of an AHO directly to this Court, and Rule 12-601 NMRA, which sets forth the procedure for filing such direct appeals.

**DISCUSSION**

{5} Taxpayer broadly argues that the AHO's decision and order is not in accordance with the law. Specifically, Taxpayer argues that the transactions at issue—those in which a purchaser entered into a retail installment contract with Taxpayer for the purchase of a used vehicle and subsequently returned such vehicle—were not "sales" subject to the excise tax under the Act. In Taxpayer's view, when the purchasers returned the vehicles to Taxpayer, the retail installment contracts between Taxpayer and the purchasers were "unwound" and rescinded, such that the transactions "ceased to qualify as 'sales' under New Mexico law." The Department answers that (1) the underlying transactions constitute sales under the Act despite Taxpayer's agreements to rescind certain retail installment contracts, and (2) the Act does not include any exceptions that could support Taxpayer's assertions.

{6} In reviewing the AHO's decision, we presume that the "assessment of taxes or demand for payment made by the [D]epartment is . . . correct." NMSA 1978, Section 7-1-17(C) (2007, amended 2023). "[W]hether a protesting taxpayer has overcome the statutory presumption of correctness is a purely legal determination." *Gemini Las Colinas, LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-039, ¶ 2, 531 P.3d 622. Under Section 7-1-25(C), "[t]his Court will only set aside an AHO's decision if the decision is: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance

4

with the law." *Tucson Elec. Power Co. v. N.M. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 6, 456 P.3d 1085 (internal quotation marks and citation omitted). "Even when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo." *Elite Well Serv., LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-041, ¶ 6, 531 P.3d 635 (internal quotation marks and citation omitted). "We may affirm the AHO's ruling on a ground not relied upon by the AHO if reliance on the new ground would not be unfair to [the t]axpayer." *Tucson Elec. Power Co.*, 2020-NMCA-011, ¶ 6.

{7} "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Id.* ¶ 8 (internal quotation marks and citation omitted). "The guiding principle in statutory construction requires that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Elite Well Serv., LLC*, 2023-NMCA-041, ¶ 7 (internal quotation marks and citation omitted). We ultimately "consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." *Tucson Elec. Power Co.*, 2020-NMCA-011, ¶ 8 (internal quotation marks and citation omitted).

**{8}** Under Section 7-14-3 of the Act:

> An excise tax, subject to the credit provided by Section 7-14-7.1, is imposed upon the sale in this state of every vehicle, except as otherwise provided in Section 7-14-7.1 . . . . To prevent evasion of the excise tax imposed by the . . . Act and the duty to collect it, *it is presumed that the issuance of every original and subsequent certificate of title* for vehicles of a type required to be registered under the provisions of the Motor Vehicle Code *constitutes a sale for tax purposes*, unless specifically exempted by the . . . Act or unless there is shown proof satisfactory to the [D]epartment that the vehicle for which the certificate of title is sought came into the possession of the applicant as a voluntary transfer without consideration or as a transfer by operation of law.

(Emphasis added.) The word "sale" is not expressly defined by the Act—hence the AHO's reliance on the definition of the word from the Gross Receipts and Compensating Tax Act. *See* § 7-14-2; *see also* § 7-9-3(A). Taxpayer contends that without a definition of "sale," the presumption included in Section 7-14-3 "that the issuance of every original and subsequent certificate of title for vehicles . . . constitutes a sale for tax purposes" is rebuttable and, as noted above, asserts that a sale does not necessarily occur when a certificate of title is issued. Indeed, Taxpayer argues that because the vehicles in this case were returned after purchase, and the relevant retail installment contracts were unwound, no sales for tax purposes occurred under the Act. Just as the Act lacks a definition of the word "sale," the Act likewise lacks any clear indication of how a presumption of such a sale may be rebutted. *See* §§ 7-14-2, -3. We look to relevant legislative history in order to discern whether, in this case, Taxpayer successfully rebutted the presumption of the

6

occurrence of a sale contained within Section 7-14-3. *See Renzenberger, Inc. v. N.M. Tax'n & Revenue Dep't*, 2018-NMCA-010, ¶ 7, 409 P.3d 922 ("If there is an ambiguity or a lack of clarity, we will turn to other aspects of statutory construction, including the purpose of the statute and its legislative history.").

{9}    As explained by the AHO in its decision and order, an excise tax associated with the sales of used vehicles was first enacted in 1935 under the Emergency School Tax Act, which, in pertinent part, imposed an "excise tax" on the sale of "new or second-hand automobiles, trucks or tractors." 1935 N.M. Laws, ch. 73, § 201(D). Under the Emergency School Tax Act, "a person engaged in selling at retail, new or second-hand automobiles, . . . shall pay a tax of one-half of one per cent upon the gross receipts of sales of new or second-hand automobiles." *Id.* There, the term "gross receipts" was defined as:

> the total receipts of a taxpayer received as compensation for personal or professional services for the exercise of which a privilege tax is imposed by [the Emergency School Tax Act], the total receipts of a taxpayer derived from trades, business, commerce, and the gross proceeds of sales as hereinafter defined, and without any deduction on account of losses or expenses of any kind.

1935 N.M. Laws, ch. 73, § 103(d). The Emergency School Tax Act uniquely specified that the "[g]ross proceeds of sales shall not include the sale price of property returned by customers when the full sale price thereof is refunded either in case or by credit." 1935 N.M. Laws, ch. 73, § 103(e) (internal quotation marks omitted).

{10}     In 1955, the Legislature adopted a statute which separated the taxation of motor vehicles from the gross receipts tax, placing instead an excise tax on the issuance of certificates of title for vehicles—akin to the current language in Section 7-14-3. *See* 1955 N.M. Laws, ch. 247, § 3(a). Notably, unlike the Emergency School Tax Act, the 1955 statute did not contemplate or include any allowance or exemption for returned or refunded vehicles. In 1988, the Legislature enacted the Act, including Section 7-14-3. Since its enactment, Section 7-14-3 has never included a provision comparable to that in the Emergency School Tax Act in which the Legislature exempted returned and refunded vehicles from the imposition of a tax.

{11}     This historical review indicates that the Legislature did not intend for the excise tax under the Act to function identically to a gross receipts tax, given that the Legislature separated the taxation methods in 1955. It is for this reason we decline to adopt the AHO's reliance of the Gross Receipts and Compensating Tax Act's definition of "selling" to inform our interpretation of Section 7-14-3 in resolving this appeal. Moreover, the above legislative history indicates that the Legislature did not intend for the Act to provide a tax exemption for returned and refunded vehicles, as evinced by the inclusion of such exemption in the context of gross receipts tax and the exclusion thereof under the Act. Indeed, Section 7-14-3 is bereft of any language implying an exemption for returned and refunded vehicles, and we "will not read into a statute language which is not there" given that "[t]he Legislature knows how

8

to include language in a statute if it so desires." *Elite Well Serv.*, 2023-NMCA-041, ¶¶ 7, 18 (internal quotation marks and citations omitted). Under Section 7-14-6, the enumerated exemptions from the excise tax under the Act do not apply to Taxpayer or the contested sales at issue, and Taxpayer does not assert otherwise. While Taxpayer contends that the return and refund of the vehicles in question essentially rendered the sales as having never occurred, such contention is not reflected in Section 7-14-3, or elsewhere in the Act, and does not comport with legislative history. Rather, while the plain language of the statute is unclear as to the definition of a sale or how the presumption of a sale can be rebutted by a party, the relevant legislative history supports a conclusion that, in this case, Taxpayer failed to rebut the presumption that a sale occurred upon the issuance of title in the relevant underlying transactions. *See id.*

**{12}** When interpreting a statute, "[i]t is only where the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application that we go beyond the mere text of the statute." *Elite Well Serv.*, 2023-NMCA-041, ¶ 19 (internal quotation marks and citation omitted). Here, we do not consider it to be absurd, unreasonable, or otherwise inappropriate that a taxpayer in Taxpayer's position would be unable to seek a refund from the Department for taxes paid on vehicles when (1) Taxpayer elects to pay such excise taxes upfront; (2) Taxpayer allows vehicles to be returned for refunds—in some cases allowing such returns to

9

occur over 100 days from purchase; and (3) Taxpayer does not require purchasers who return vehicles to repay the excise taxes initially paid by Taxpayer. Each of these facts are reflected in Taxpayer's business model, and the Department is not responsible for the management thereof. Indeed, under the business model chosen by Taxpayer, and given the issuance of a new title under that policy, Taxpayer's return policy is more akin to a repurchase of a given sold vehicle by Taxpayer than a returned and refunded item. Moreover, none of this converges to alter the fact that, under the Act, the excise tax is a tax imposed on the purchaser of a vehicle, not on the seller. It is only by virtue of Taxpayer's dual role as both a used vehicle dealer *and* a financing company that it finds itself in a comparable position to that of a purchaser following Taxpayer's elective payment of the excise tax on the purchaser's behalf. The events leading to this appeal could have been avoided—and could be avoided in the future—had Taxpayer required its customers who returned a purchased vehicle to either (1) pay Taxpayer the amount of excise tax originally paid by Taxpayer, or (2) receive a refund less the amount of excise tax paid. That the retail installment contracts at issue did not include any such provision is not a flaw in the Department's imposition of the excise tax under Section 7-14-3, but rather is a curable component of Taxpayer's chosen business model and contract practices.

{13} While the AHO's decision and order was premised upon somewhat different reasoning than our own, we agree with the AHO's ultimate conclusion to deny Taxpayer's protest of its denied refund. *See Tucson Elec. Power Co.*, 2020-NMCA-011, ¶ 6. We discern no unfairness that could befall Taxpayer by our application of axiomatic principles of statutory construction, *see id.* ¶¶ 6-8, and thus hold that the AHO did not err in denying Taxpayer's protest of its denied refund.

**CONCLUSION**

{14} For the above reasons, we affirm.

{15} **IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**MEGAN P. DUFFY, Judge**

_____

**ZACHARY A. IVES, Judge**