CARROLL, Judge.
The appellee sued the state comptroller and the sheriff in Dade County, seeking to enjoin enforcement of the state sales tax upon certain transactions involving tangible personal property. The defendants answered separately. From a final decree rendered in favor of the plaintiff, the comptroller appealed. The defendant sheriff, not appealing, became an appellee under rule 3.11(a), F.A.R., 31 F.S.A.
The determinative question here, as it was in the trial court, is whether the products prepared and sold by the appellee Sgurovsky come within the stated exemptions in the sales tax statute, Chapter 212, Fla.Stat., F.S.A.
The cause was tried before the chancellor. There was a stipulation of facts, and testimony of an architect which in general followed it. The stipulation was as follows:
“It is hereby stipulated by and between the parties, through their undersigned attorneys, that the issues made by the pleadings shall be resolved upon the following stipulation:
“1. That warrant and execution issued in this cause on July 7, 1960 was in the amount of $859.63 (representing the amount of the taxpayer’s alleged liability to the comptroller) plus $6.50 for costs incident to-recording the said warrant. Interest has. been computed, and included in the foregoing, through July 7, 1960.
“2. The controversy in this litigation does not involve the computations of the comptrollér; it being the plaintiff taxpayer’s contention that none of the items or transactions, upon which the assessment is based, are subject to the Florida sales or use tax.
“3. The plaintiff taxpayer has exhausted! his administrative remedies in that he, pursuant to statute, applied to the comptroller for a rehearing which was granted. However, the comptroller’s assessment was not altered at said hearing; hence the taxpayer has invoked judicial review.
“4. The plaintiff, Nicholas Sgurovsky, is. an independent contractor, who contracts with architects, builders and advertising-agencies upon a piece work basis. He operates his business as an individual proprietorship.
“5. The business of the taxpayer is, essentially, as follows: He makes renderings, and transfers possession for a consideration, to the architects, builders, advertising agencies, etc., with whom he deals. In the first instance, he receives sketches from, architects, builders, advertising agencies and a few other incidental parties. The *665 taxpayer takes these sketches and transposes them onto bristol board (sometimes making them larger, sometimes smaller, sometimes the same size). He then colors the bristol board and fills in the trees, driveways, grass, and other landscaping material. While he does not color the original sketch furnished by the architect or other person, he does work from such sketch which is the property of such person. These renderings are then transferred and delivered to the architect, builder, etc. for a consideration on a piece work basis. The rendering is used by the architect, builder or advertising agency to show their respective ■clients.
“6. All material used by the plaintiff taxpayer incident to making the rendering (except the original sketch) is furnished by the plaintiff taxpayer. The sketch or plan ■of the architect, builder, or advertising ■agency, from which the rendering is cre■ated, at all times remains the property of the vendee and is returned to the vendee when the plaintiff taxpayer completes the Tendering.
“7. The sample of plaintiff’s work, furnished the comptroller at the administrative hearing (which bears the plaintiff’s name in the lower right hand corner and the symbol ‘PX. 1, before Comptroller’ in upper right hand corner), shall be intro■duced in evidence at the final hearing before the chancellor.
“8. The plaintiff taxpayer has neither ■collected nor remitted any sales or use tax•es on any of these transactions.
“9. Either side may present, and offer into evidence any and all material rules ■or regulations of the comptroller relating to the sales and use tax.”
The final decree exempting the artist’s •drawings contained the following findings ■and conclusions which disclose the basis -on which the chancellor reached his decision:
“1. That the Plaintiff performs work, labor and services upon the work product of another.
“2. That the Plaintiff cannot sell or dispose of the said work product since it is the property of another and the Plaintiff is restricted to performing the services upon the said work product and returning the same to his customer.
“3. That the Plaintiff is not subject to Rule 33 of the Rules and Regulations of the Florida Sales and Use Tax Law, but that on the contrary the Plaintiff is exempt from and is not required to collect a sales tax from his customers. (Rule 1(20) and (21) and Rule 41(2) of the said Rules and Regulations, and Chapter 212 of the Florida Statutes, in particular Section 212.08(8) (b).
”4. That the Plaintiff has the status of a Professional performing services upon the work product of another Professional and that such services are excluded from, the Sales Tax Law under Chapter 212, Section 212.08(8) (b) and Rule 41(2) of the Rules and Regulations.”
On consideration of the facts as disclosed in the stipulation and testimony, and with the benefit of the argument and briefs of counsel, we are impelled to disagree with the result reached by the able chancellor. His findings that the - plaintiff performs work on the product of another, and that what is sold is the product of another, were contrary to the stipulated facts and therefore against the manifest weight of the evidence.
Certain of the material facts were accurately restated in the argument section of appellant’s brief as follows:
“It was stipulated, and Appellee’s own witness testified, that the reason they want his product is to advertise and promote their designs. Appellee furnishes architects, builders and advertising agencies with bristol board representations from sketches and designs submitted to him. All infor *666 mation including the color scheme is given to him to make the rendering. Possession of the rendering is then transferred to the architects and others for a consideration. All materials used by Appellee to make a rendering are furnished by him.”
Also, we regard as correct the following conclusions taken from that section:
“From these stipulations of fact, two factual conclusions emerge: (1) Appellee does not perform services on the property of others, rather he makes a new and independent product (which is the true object of the contract) from the design and sketch furnished him, and (2) it is clear that the transfer of possession of the bristol hoard rendering (which is tangible personal property) for a consideration is a ‘sale’ rather than a ‘service’ under Chapter 212, F.S.”
We agree with the comptroller’s contention that a transfer for consideration of these products or “renderings” constitutes a sale as defined in the Act, § 212.02 (2) and (3) (a). Section 212.02(4) provides that sale price includes services “that are a part of the sale, valued in money, whether paid in money or otherwise.” The comptroller is empowered by §§ 212.17(4) and 212.18(2) to make rules relating to the application and enforcement of the provisions of the Act. Rule 33, made by the comptroller in this connection, distinguishes an outright sale or sale of the property rights in a work of art, from the sale of a right to reproduce a work of art. In the instant case the seller (artist) makes a complete sale of the products rather than of a right to reproduce them. In concluding differently with respect to rule 33, the chancellor did so on the basis of the facts as he viewed them, but which we feel were shown to be otherwise.
The appellee argues, and the chancellor so ruled, that the items in question fall within the exemption provided by § 212.08(8) (b) and comptroller’s rules numbered 1(20), 1(21) and 41(2). We hold that the items or products involved were not within the exemption.
Section 212.08, deals with “Specified Exemptions.” Subsection (8) thereof concerns “Miscellaneous Exemptions.” Paragraph (b) of the latter deals with “Professional Services,” and is relied on by the appellee to furnish the exemption here. It states:
“(b) Professional services. — Also exempted are professional, insurance or personal service transactions which involve sales as inconsequential elements for which no separate charges arc made.
“The above exempted personal service transactions do not exempt the sale of information services involving the furnishing of printed, mimeographed, multigraphed matter or matter duplicating written or printed matter in any other manner, other than professional services and services of employees, agents or other persons acting in a representative or fiduciary capacity or information services furnished to newspapers. ‘Information services’ shall mean and include the services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons.”
Comptroller’s rules 1(20) and 1(21) are repetitious of the two paragraphs of § 212.-08(8) (b) quoted above, and add nothing material thereto. Comptroller’s rule 41(2) is entitled “Sales by Photographers, Photo-finishers, Photostat Producers, Photo-engravers and Wood Engravers.” Paragraph (2) thereof, relied on by the appellee, provides :
“When the persons covered by this rule render services such as retouching and tinting or coloring of photographs belonging to others they are rendering services and need not collect the tax from their customers.”
To the facts as they appeared in this case, rule 41(2) was inapplicable. In order to* come within that rule it would be neces *667 sary that the artist here take a drawing submitted by the architect or other person, retouch or color the item belonging to such architect or person, and return it to the latter. That was not done. The procedure followed was for the artist to prepare a separate article, using the drawing and other instructions of the architect as guides. His product was different in texture and generally different in size.
There remains for consideration the question of whether the exemption as to professional services provided by § 212.08(8) (b) includes the items involved here. The statute there exempts “professional, insurance or personal service transactions which involve sales as inconsequential elements for which no separate charges are made.” Unquestionably personal services of the artist or craftsman furnish or bring about the main value of the product. But it is the product which is sold, and the Tenderer’s services without the product would not be of any value to the architect. The sale can not be said to be “inconsequential.” It is comparable to an artist’s preparation and sale of a portrait to a customer. The customer buys the resultant portrait. It is the product which represents the value, after the services have been performed which bring it into being.
In a similar case in New York, Glushak v. City of New York, 6 A.D.2d 381, 178 N.Y.S.2d 33, the facts disclosed by the syllabus were as follows: “Action by Tenderer, who prepared pictorial representations of proposed buildings from plans given to him by professional architects and builders and who charged lump sum for drawings transferred unconditionally to architects or builders and who was not licensed architect, for judgment declaring that he performed personal services of professional nature and that fees received for such services were not subject to New York City sales tax law as sales of tangible personal property.” The trial court denied the city’s motion to dismiss, and the city appealed. The New York appellate court reversed, and directed dismissal. In that case the court said (178 N.Y.S.2d at 35-36):
“Plaintiff is a specialized artist. He uses his knowledge of architectural principles to make renderings of buildings as they will appear when completed. The renderings enable the architect to show clients how the proposed structure would look when completed. They are also used extensively for advertising and publicity purposes. The architect often fulfills his own obligation to submit such a rendering when he presents his plans and specifications to his own client.
“Hillman Periodicals, Inc. v. Gerosa, 285 App.Div. 441, 137 N.Y.S.2d 863, affirmed 308 N.Y. 982, 127 N.E.2d 842, is decisive of the issues herein. There the sales tax was applied to commercial illustrators who contracted to draw illustrations for books and transferred the final drawings to their customers. In that case, this Court, holding that artists who transfer their pictures to their customers are engaged in making sales, said in 285 App.Div. at page 442, 137 N.Y.S.2d at page 864, ‘The artists, who were the vendors under their contracts with petitioner, “vested” all rights in petitioner, “assigned all right, title and interest” in the material to petitioner and clearly retained no rights whatsoever in the finished products.’ Emphasizing that the skill and services required to make the drawings could not be separated therefrom for sales tax treatment, this Court further stated in 285 App.Div. at page 442, 137 N.Y.S.2d at page 864: ‘Here there was an integration of the services rendered into tangible personal properties which were sold irrevocably to petitioner.’ ”
In order for a transaction which comes within the definition of a sale taxable under the Florida sales tax law to be exempt, it must under the policy stated in § 212.21 (2) be “specifically exempted therefrom.” That statement of policy in the act conforms to the general rule that exemp *668 tions of property from taxing statutes must be expressly and clearly provided. Green v. Pederson, Fla.1957, 99 So.2d 292, 296; State ex rel. Wedgworth Farms, Inc v. Thompson, Fla. 1958, 101 So.2d 381, 386; United States Gypsum Company v. Green, Fla.1959, 110 So.2d 409, 413. Cf. L. B. Smith Aircraft Corp. v. Green, Fla.1957, 94 So.2d 832.
We hold, on the undisputed facts, that the appellee is engaged in the sale of tangible personal property within the meaning of the Florida sales tax law. Accordingly, the decree appealed from should be and hereby is reversed and the cause remanded to the trial court with directions to dissolve the injunction and dismiss the suit.
Reversed and remanded with directions-