472 P.2d 987

EVCO, a New Mexico Corporation, d/b/a EVCO Instructional Design, Appellant,

v.

Franklin JONES, Commissioner of the Bureau of Revenue of the State of New Mexico and the Bureau of Revenue of the State of New Mexico, Appellees.

No. 430.

Court of Appeals of New Mexico.

May 28, 1970.

Rehearing Denied July 7, 1970.

Certiorari Denied July 31, 1970.

Kendall O. Schlenker, Schlenker & Parker, P.A., Gallagher & Walker, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Richard J. Smith, Asst. Atty. Gen., Santa Fe, for appellees.

## OPINION

OMAN, Judge.

This appeal was taken by appellant taxpayer from a written order of appellee Commissioner of Revenue, pursuant to § 16–17–8(F), N.M.S.A.1953 (Supp.1969), and § 72–13–39, N.M.S.A.1953 (Repl. 10, pt. 2, Supp.1969). The matter is before us on a stipulation of facts, and the portions of this stipulation essential to a determination of the issues presented under the points relied upon for reversal are:

"(1) Taxpayer, doing business as Evco Instructional Designs, is a New Mexico corporation, engaged in business as a designer or creator of instructional or educational programs. Its employees are principally writers, artists, draftsmen, production typists and administrators. Certain of the employees are skilled in originating and designing educational materials. Taxpayer is equipped and staffed to develop an educational idea all the way through to the finished product, which generally consists of reproducible originals of books, films, and magnetic audio tapes.

"(2) Taxpayer's principal office is at 235 San Pedro Drive N. E., Albuquerque, New Mexico.

" * * *

"(6) Taxpayer's protest (to a tax assessment) is based upon the following contentions:

"(a) The assessment fails to recognize and allow exemptions from the Emergency School Tax for sales of tangible personal property to government agencies and exempt organizations for the period of time from January 1, 1966 to June 30, 1967, and such exemptions being allowed by Sec. 72–16–5, N.M.S.A., 1953 Comp.

"(b) The assessment fails to recognize and allow deductions in computing the Gross Receipts Tax for sales of tangible personal property to government agencies and exempt organizations for the period of time from July 1, 1967 to December 31, 1968, such deductions being provided by Sec. 72–16A–14(G) and (L), N.M.S.A., 1953 Comp.

" * * *

"(e) The assessment is incorrect in that it attempts to impose a tax upon transactions which are exempt by virtue of their being in interstate commerce.

"(f) The assessment fails to recognize and allow deductions from the gross receipts tax for sales of tangible personal property in interstate commerce, contrary to Sec. 72–16A–14(H) for the period of time from July 1, 1967 to December 31, 1968.

"(g) The same contentions and protests correctly apply to City of Albuquerque Municipal Sales Tax.

" * * *

"(9) It is agreed by the parties:

" * * *

"(g) B.I.A. [Bureau of Indian Affairs] Contract No. 14–20–0650–1808 resulted in gross receipts of $103,852.00. This contract was performed at Isleta Pueblo, New Mexico. The contract was for a computer-mediated instruction project. Taxpayer was required to identify conceptual deficits, identify and select relevant audio-visual materials, and produce a computer program to mediate between the deficits and the audio-visual materials. Taxpayer produced a complete educational program, wrote a final report, concept dictionary, film concept analysis and miscellaneous items suitable for reproduction and reuse. $12,875.00 of the contract amount is solely for services. Deductions have been allowed for equipment left on the job site.

"(h) Typical of all other contracts with government agencies and the one contract with an exempt organization is the Department of Agriculture (Forest Service) contract of January 19,

1967. Under this contract were produced:

*Camera-ready copies:*

Manual entitled 'Orientation to the Training Course for Engineers in the Forest Service—Presentation Package' (78 pages, 8½" x 11") 'Self-Administered Questions and Referral Section' (16 pages, 8½" x 11")

Programmed textbook entitled 'Technical Orientation to the Forest Service Division of Engineering' (334 pages, 8½" x 11")

Programmed notebook entitled 'Technical Orientation to the Forest Service Division of Engineering' (35 pages, 8½" x 11")

Manuals entitled 'Instructor's Guide' (17 pages, 8½" x 11"), 'Instructor's Handbook' (15 pages, 8½" x 11"), 'Discussion Questions' (6 pages, 8½" x 11"), 'Programmed Notebook' (108 pages, 8½" x 11")

Programed notebook and textbook (unit one through unit five, part four) entitled 'Technical Orientation to the Forest Service Transportation System' (670 pages, 8½" x 11")

Magnetic Audio Tape

195 Photographic color slides

Although this contract is typical, not all contracts require the production of all items required by this contract.

"(i) Typical of all contracts with clients and customers which are neither government agencies nor exempt organizations is the I.B.M. [International Business Machines] contract of July 11, 1968. Under this contract were produced: ꓼ

*Camera-ready copies:*

Manuals entitled 'IBM 50 Magnetic ꞉Data Inscriber (Audio Course) For Experienced Card Punch/Verifier Operators—Illustrations' (22 pages, 8½" x 11"), 'Examination' (4 pages, 8½" x 11"), 'Operator's Guide' (14 pages,

8½" x 11"). Miscellaneous attachments (8 pages, 8½" x 11")

Script for magnetic audio tape (45 pages, 8½" x 11") and tape from script.

"(j) All contracts with both government agencies and other clients and customers of taxpayer were negotiated and entered into outside the State of New Mexico and all camera-ready copies, filmstrips, photographic slides, and magnetic audio tapes were delivered outside the State of New Mexico. Actual performance of contracts where tangible personal property was produced was in New Mexico.

"(k) Although taxpayer has the capability to actually publish and print the books and manuals it creates, its contracts here involved required only the production of camera-ready copies from which its clients or customers publish the books and manuals. The same is true of filmstrips, slides, and magnetic audio tapes, where the original only is produced. The reproducible originals were not resold by the contracting party to whom they were delivered."

The portions of the Commissioner's order with which the taxpayer disagrees, and the validity of which is to be determined on this appeal, are:

"1. Although camera-ready copies and other reproducible items are tangible personal property which was produced as a result of each of taxpayer's contracts, taxpayer's sales to government agencies and exempt organizations were not sales of tangible personal property exempt under the Emergency School Tax and deductible under the Gross Receipts Tax, since the tangible property was merely incidental to the performance of services.

"  *   *   *

"3. Taxpayer's gross receipts are not from the sale of interstate commerce and therefore exempt from the Emergency

School Tax or deductible in computing the Gross Receipts Tax.

"4. Taxpayer's gross receipts are not exempt nor deductible for purposes of the City of Albuquerque Municipal Sales Tax for the same reasons that they are not exempt or deductible for purposes of the Emergency School Tax and the Gross Receipts Tax."

It is conceded by the parties that the taxpayer is liable for the Albuquerque Municipal Sales Tax only if liable to the State for a sales tax, or emergency school tax and gross receipts tax, and for the same reasons. The taxpayer has abandoned its Point 3, under which it contended its gross receipts from sales to retail dealers, wholesalers and manufacturers were exempt from the emergency school tax as provided by § 72–16–14, N.M.S.A.1953 (Repealed effective July 1, 1967) and the gross receipts tax as provided by § 72–16A–14 (A) and (B), N.M.S.A.1953 (1966 Interim Supp.) (Repealed effective July 1, 1969). Thus, our decision on the first two points asserted by the taxpayer will dispose of all issues presented by the appeal.

■ Under the first point, the taxpayer contends the contracts, under which it furnished the reproducible originals of books, manuals, films and magnetic audio tapes to government agencies and exempt organizations, constituted sales of tangible personal property. The Commissioner disagreed and levied the assessment on the theory that the contracts were for services, although the camera-ready copies and other reproducible items were admittedly tangible personal property created and produced by the taxpayer pursuant to the contracts. Neither the statutes nor any of the Commissioner's regulations define or offer any specific aid in determining what is meant in the statutes by tangible personal property. We agree with the position of the taxpayer.

This is a question of first impression in this jurisdiction, but has been presented under varying forms of tax statutes and varying circumstances, with varying results, in many other jurisdictions. These varying results cannot be fully reconciled in principle.

■ The Commissioner first contends the taxpayer is seeking an exemption, exception or deduction from the tax laws, and that statutes should be reasonably but narrowly construed against tax exemptions, exceptions, or deductions. He cites in support of this position McKee General Contractor, Inc. v. Bureau of Revenue, 63 N.M. 185, 315 P.2d 832 (1957); Flaska v. State, 51 N.M. 13, 177 P.2d 174 (1947); Peisker v. Unemployment Compensation Commission, 45 N.M. 307, 115 P.2d 62 (1941); Iden v. Bureau of Revenue, 43 N.M. 205, 89 P.2d 519 (1939). We agree with this principle of construction, but we also agree that taxing statutes should generally " * * * be given a fair, unbiased and reasonable construction, without favor either to the taxpayer or the state, to the end that the legislative intent is effectuated and the public interests to be subserved thereby furthered. * * *" Besser Company v. Bureau of Revenue, 74 N.M. 377, 394 P.2d 141 (1964).

Here there is no question but what the agencies with which we are here concerned —agencies of the United States Government and the Research Foundation of the University of Toledo—are clearly exempt under the taxing statutes in question, and it has been so stipulated. The sole question is, therefore, whether or not the contracts between the taxpayer and these agencies for the creation, production and delivery of the reproducible originals of the books, manuals, films, magnetic audio tapes, and other items of tangible personal property constituted sales of tangible personal property, within the contemplation of the statutes, or were contracts for the performance of services to which the items of tangible personal property were merely incidental.

The tax statutes in question clearly provided that sales of "tangible personal property" or the "selling of tangible personal property," to the agencies here involved should be exempt from the tax. The term "tangible personal property" is not defined in either Act, but, as already stated, it is

admitted that the items in question were tangible personal property. There is also no question that the contracts required, as the ultimate acts of performance thereunder, the delivery to the agencies of these items of tangible personal property. These items constituted the finished product contemplated by the contracts and were essential to the teaching, instructional and educational purposes for which they were intended. Their non-production, non-use or destruction would apparently defeat the ultimate objective of the entire contract under which they were created and furnished to the purchaser.

The fact that their value depended very largely upon the skills, learning, and technical abilities of the taxpayer, rather than the physical or tangible materials which went into their makeup, made them nonetheless tangible personal property subject to sale. See District of Columbia v. Norwood Studios, Inc., 118 U.S.App.D.C. 358, 336 F.2d 746 (1964); Larey v. Dungan-Allen, Inc., 244 Ark. 908, 428 S.W.2d 71 (1968); Albers v. State Board of Equalization, 237 Cal.App.2d 494, 47 Cal.Rptr. 69 (1965), cert. denied, 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966); People v. Grazer, 138 Cal.App.2d 274, 291 P.2d 957 (1965); Green v. Sgurovsky, 133 So.2d 663 (Fla.Ct.App.1961); Community Telecasting Service v. Johnson, 220 A.2d 500 (Me. 1966); Mississippi State Tax Commission v. Hinton, 218 So.2d 740 (Miss.1969); Hillman Periodicals, Inc. v. Gerosa, 285 App. Div. 441, 137 N.Y.S.2d 863, aff'd, 308 N.Y. 982, 127 N.E.2d 842 (1955); People ex rel. Walker Engraving Corporation v. Groves, 243 App.Div. 652, 276 N.Y.S. 674, aff'd, 268 N.Y. 648, 198 N.E. 539 (1935).

As above stated, the finished form of the items was essential to the use for which they were intended, and their great value to their purchasers, as the means of accomplishing the ultimate purposes of the contracts, depended on their existence in their finished form. Thus, as we view the principal objective of the agencies under their contracts, it was to secure from the taxpayer the finished items, and these finished items cannot logically be said to be merely incidental to the performance of services. Clearly the purpose of the exemptions in the statutes was to exempt the United States, or any agency or instrumentality thereof, the State of New Mexico, or any subdivision thereof, non-profit schools, universities, hospitals, and religious or charitable organizations from the impact of the taxes in question. The adoption of the position taken by the Commissioner would result in the ultimate imposition of taxes, such as those here involved, upon the agencies and institutions which the Legislature clearly intended should be exempt therefrom, or result in the tax burden being shifted to other taxable customers of the taxpayer. Neither of these results would be consistent with the legislative intent. Shifting the tax burden would be inconsistent with the object of requiring a tax burden to fall with uniformity and equality upon the class of persons sought to be taxed. See New Mexico Electric Service Co. v. Jones, 80 N.M. 791, 461 P.2d 924 (Ct.App.1969).

As already stated, we fully appreciate that other jurisdictions have taken what appears to be a position contrary in principle to that taken by us. For instance, see Bucyrus-Erie Company v. Lorenz, 26 Ill.2d 183, 186 N.E.2d 250 (1962). For a discussion and analysis of many of the cases dealing with the issues here presented, see Hellerstein, The Scope of the Taxable Sale Under Sales and Use Tax Acts: Sales as Distinguished From Services, 11 Tax Law Review 261, 261–288 (1955–56).

Under its second point, the taxpayer claims exemption from the taxes on its receipts under contracts with customers which were neither governmental agencies nor exempt institutions or organizations. As shown by the stipulated facts quoted above under Paragraph 9(i), the I.B.M. contract of July 11, 1968, is typical of these contracts, and the items of tangible personal property produced and delivered by the taxpayer to these customers, insofar as appears from the stipulation of facts, and

insofar as material to the solution of the question now to be resolved, are similar to the items of tangible personal property considered under Point 1 above. Under Point 1, we held sales of similar tangible personal property to be exempt, because the statutes expressly provided for exemptions of such sales to the vendees there involved.

We are not here concerned with any such exemptions, and the fact that sales of tangible personal property were made under these contracts is not alone determinative of the issue now before us. The taxpayer claims exemption here upon the ground that the imposition of the taxes would constitute a tax upon interstate commerce. Paragraph 9(j) of the stipulation, as quoted, shows, and the taxpayer has so asserted in its brief in chief, that the contracts were negotiated and entered into outside the State of New Mexico, and the items of tangible personal property produced by the taxpayer pursuant to these contracts were delivered outside New Mexico. However, the actual performance of all work in the production of this property was accomplished by the taxpayer within New Mexico, where it maintains its principal office.

As we understand the stipulation relative to the assessment made by the Commissioner, and the briefs of the parties, the Commissioner seeks to assess taxes on the gross receipts of the taxpayer from these contracts. No effort has been made to apportion the overall services rendered and expenditures made in connection with negotiating and performing these contracts. Thus, we do not have a tax levied only on that portion of the gross receipts which can be attributed or allocated to the activities performed in New Mexico, as was the case in Bell Telephone Laboratories, Inc. v. Bureau of Revenue, 78 N.M. 78, 428 P.2d 617 (1966), involving assessments under the Sales Tax, or Emergency School Tax Act, which is one of the acts here involved.

As stated in the Bell Telephone Laboratories case, and in Dikewood Corporation v. Bureau of Revenue, 74 N.M. 75, 390 P.2d 661 (1964), this was a tax on the privilege of doing business in New Mexico. This tax act was repealed effective July 1, 1967, and was replaced by the Gross Receipts and Compensating Tax Act, which is the other act here involved. Sections 72–16A–1 to 19, N.M.S.A.1953 (Repl. 10, pt. 2, Supp. 1969). The second section of this present act provides in part:

"The purpose of the Gross Receipts and Compensating Tax Act [72–16A–1 to 72–16A–19] is to provide revenue for public purposes by levying a tax on the privilege of engaging in certain activities within New Mexico * * *"

There is no contention made by the taxpayer that its New Mexico activities fall outside the activities covered by the Act, except for the provision in § 72–16A–14.10 thereof that:

"Receipts from transactions in interstate commerce may be deducted from gross receipts to the extent that the imposition of the gross receipts tax would be unlawful under the United States Constitution."

Regulations adopted by the Commissioner on September 22, 1967, relative to the applicability of this section of the Act, are of no assistance in determining the question before us. On December 5, 1969, a new regulation, interpreting the applicability of this section, was adopted and provides:

"Receipts of New Mexico sellers from sales of property to non-residents of New Mexico where delivery is made out-of-state by seller's vehicle, U. S. Mail, or common carrier are receipts from transactions in interstate commerce and such receipts may be deducted from the gross receipts of the seller." G.R.Regulation 14.10–2.

It appears this interpretation of the statute would clearly exempt the gross receipts from the sales in question from the Gross Receipts and Compensating Tax Act, but we are not required to determine whether this regulation is an invalid attempt to negate § 72–16A–14.10, supra, because the regulation does not apply to

the taxing period with which we are concerned.

The taxes here were imposed under both the Emergency School Tax Act, and the Gross Receipts and Compensating Tax Act, for the privilege of doing business in New Mexico. As stated in General Motors Corporation v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964), and quoted in Bell Telephone Laboratories v. Bureau of Revenue, supra:

"'* * * [I]t is well established that taxation measured by gross receipts is constitutionally proper if it is fairly apportioned.

"'A careful analysis of the cases in this field teaches that the validity of the tax rests upon whether the State is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. For our purposes the decisive issue turns on the operating incidence of the tax. In other words, the question is whether the State has exerted its power in proper proportion to appellant's activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the State has afforded. * * *'"

■ As already stated, and as shown by the stipulation, the taxpayer is a New Mexico corporation with its principal office in New Mexico, and the actual performance of all work in the production of the property provided for by the contracts here in question was accomplished within New Mexico. These in-state incidents are clearly sufficient as a basis for the levy by New Mexico of a gross receipts tax without doing violence to the interstate commerce clause of the federal constitution. See General Motors Corporation v. Washington, supra; Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951); Norton Co. v. Department of Revenue, 340 U.S. 534, 71 S.Ct.

377, 95 L.Ed. 517 (1951); Bell Telephone Laboratories v. Bureau of Revenue, supra.

■ As above stated, no effort has been made to impose the tax only upon that portion of the gross receipts which can be attributed to the activities performed within New Mexico. However, the taxpayer makes no complaint of this failure to apportion. Its position is that all of the gross receipts from the contracts under consideration are receipts from transactions in interstate commerce, that the imposition of the tax on any of these receipts is an unconstitutional burden on interstate commerce and that the taxpayer is, therefore, entitled to have all these gross receipts deducted, or exempt, from its taxable gross receipts, as provided in § 72–16A–14.10, supra. There is no showing in the record, and no argument is made, that there is a possibility of another state taxing, or attempting to tax, any receipts from, or activities incident to the performance of, these contracts. Thus, the question of multiple taxation, insofar as these contracts are concerned, is not before us, and, under these circumstances, the taxpayer has failed in its burden of showing an unconstitutional tax upon interstate commerce. See General Motors Corporation v. Washington, supra; Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959); Northwest Airlines, Inc. v. Minnesota, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944).

It follows from what has been said that the order of the Commission dated October 28, 1969, insofar as it sought to impose a tax on the sales, or receipts from the sales, of tangible personal property to government agencies and exempt organizations, and insofar as the same is inconsistent with this opinion, must be reversed. Otherwise, the order should be affirmed.

It is so ordered.

WOOD and HENDLEY, JJ., concur.